## UNITED STATES v. LORD–MOTT CO., INC.
### No. 20250.

District Court, D. Maryland.
July 18, 1944.

130

Ross McKenrick, Asst. U. S. Atty., of Baltimore, Md., and Joseph L. Maguire, Senior Atty., Federal Security Agency, of Washington, D. C., for United States of America.

Eli Frank and John Henry Skeen, both of Baltimore, Md., for defendant.

WILLIAM C. COLEMAN, District Judge.

The defendant here, a Maryland canning corporation, is charged, by information, with having violated a Government regulation for determining, in part, the standard of quality for canned peas.

The Court, sitting as a jury, a jury having been waived, finds the defendant not guilty. It finds that the regulation upon alleged violations of which the information is based, is invalid because it exceeds the authority granted to the Federal Security Administrator, commonly known as the Administrator, by the Federal Food, Drug, and Cosmetic Act of June 25, 1938, 21 U.S.C.A. §§ 301–392, incl., to pass such a regulation, and therefore the Court's verdict must be not guilty as to the defendant.

It is, of course, true that this Court, sitting as a jury in a criminal case, must instruct itself in the same manner that it must instruct a jury with respect to the constitutional rights and privileges of the defendant, and to the requirement as to burden of proof, namely, that the Government in order to convict, shall sustain the burden of proof to the satisfaction of the jury (or the court sitting as a jury) beyond a reasonable doubt, upon the evidence, and only upon the evidence, as adduced at the trial. However, in the present case there is raised a defense that may be raised in any criminal case in advance of the actual trial by motion, or demurrer, or, as in the present case, by oral motion supported by testimony taken at the trial, i. e., the defense of invalidity of the regulation itself. In such case, where the question of validity is a factual one, the weight of the credible evidence controls. The proof of validity— or invalidity—is not required to be es-

tablished,—as is the guilt of the accused once the regulation is found to be valid, —beyond a reasonable doubt. One may be guilty of violating a law or regulation but if the law or regulation is found to be unconstitutional or invalid for any reason, then, of course, it becomes unnecessary to determine whether or not the Government has sustained the burden of proof of guilt to the satisfaction of the jury, or the Court sitting as a jury, beyond a reasonable doubt. So, to summarize, as the Court sees the weight of the credible evidence, it requires the Court to hold that by promulgating the regulation in controversy the Administrator exceeded the limits of his authority as respects the subject matter upon which it was exercised.

The pertinent sections of the Federal Food, Drug, and Cosmetic Act are the following:

First, among the enumerated acts and the causing thereof which are prohibited are "(a) The introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded," and "(b) The adulteration or misbranding of any food, drug, device, or cosmetic in interstate commerce." 21 U.S.C.A. § 331, subsections (a) and (b).

Second, it is provided that any person who violates the aforegoing provisions "shall be guilty of a misdemeanor and shall on conviction thereof be subject to imprisonment for not more than one year, or a fine of not more than $1,000, or both such imprisonment and fine; but if the violation is committed after a conviction of such person under this section has become final such person shall be subject to imprisonment for not more than three years, or a fine of not more than $10,000, or both such imprisonment and fine." 21 U.S.C.A. § 333, subsec. (a).

Third, the law provides that "Whenever in the judgment of the Administrator such action will promote honesty and fair dealing in the interest of consumers, he shall promulgate regulations fixing and establishing for any food, under its common or usual name so far as practicable, a reasonable definition and standard of identity, a reasonable standard of quality, and/or reasonable standards of fill of container." 21 U.S.C.A. § 341.

Fourth, the law provides that "A food shall be deemed to be misbranded—

\* \* \* \* \*

"(h) if it purports to be or is represented as—

"(1) a food for which a standard of quality has been prescribed by regulations as provided by section 341, and its quality falls below such standard, unless its label bears, in such manner and form as such regulations specify, a statement that it falls below such standard." 21 U.S.C.A. § 343, subsec. (h).

Fifth, "(a) The authority to promulgate regulations for the efficient enforcement of this chapter, except as otherwise provided in this section, is hereby vested in the Administrator." 21 U.S.C.A. § 371, subsec. (a). Following this subsection are detailed provisions covering the conduct of hearings; the effectiveness of definitions and standards of identity; the promulgation of regulations and proposed changes in regulations; the making of orders and the review of orders promulgated as a result of hearings, including provisions for review by the Circuit Court of Appeals for the Circuit wherein any person who would be adversely affected by a given order resides, or has his principal place of business; with provision also for final review by the Supreme Court. Finally, there is the following: "(6) The remedies provided for in this subsection shall be in addition to and not in substitution for any other remedies provided by law." 21 U.S.C.A. § 371(f) (6).

■ We reach the conclusion that, independently of the provision last quoted, in a criminal proceeding of this kind in the absence of some clearly expressed, valid provision in the law itself for an exclusive method of testing the validity of regulations or orders of the Administrator, a defendant is not precluded from raising the question at the trial, as has been done in the present case.

Having thus found that the defendant had a right to be heard, ab initio, in this proceeding with respect to the validity of the regulation, regardless of what the testimony, taken at a hearing conducted, as provided by the Act, on behalf of the Administrator, may show; regardless of the motives of the Administrator in promulgating the regulation, and regardless of whether or not the defendant was present at such hearing or was opposed to or in favor of the regulation, we pass to a recital of the reasons why we think the Administrator exceeded his authority in the present instance, and why, therefore, the defendant was not compelled to meet the requirements of the regulation with respect to the one specific part of it which is here involved, namely, the so-called alcohol insoluble solids, or the "AIS", method of testing quality.

We find from the weight of the credible evidence in the present case that, while this "AIS" regulation embodies a fair and reasonable way per se of determining the grade of canned peas, which, in fact, the defendant admits, nevertheless the Administrator, in the tolerance allowed in the requirements imposed by that method, has failed to make the application of that method just and reasonable to the present defendant and all others in like circumstances.

Among the suggested findings of fact as reported in the Federal Register of November 25, 1939, pages 4679–4682, are the following which were ultimately adopted by the Secretary of Agriculture as the Department findings and formed the basis for the regulation here in question, and which appear in the Federal Register for February 24, 1940, pages 741–744:

"48. The extent to which insoluble solids are present governs the mealiness of peas when they are chewed. The art of canning was first devised for the purpose of preserving the succulence of fresh vegetables, and canned peas are a product which simulates, in so far as possible, peas taken direct from the garden, cooked, and eaten. Such peas are not excessively mealy, and the quality of canned peas is lowered, depending in a large measure on the extent to which they are mealy."

"49. Mealiness in peas becomes excessive when their content of insoluble solids is such that the peas do not have the proper degree of succulence when eaten. Such mealiness can be measured objectively."

"50. Mealiness and insoluble solids content are definitely and directly correlated, and the determination of the insoluble solids gives an accurate index to the mealiness of canned peas."

"51. Canned peas are excessively mealy in the consensus of consumer taste, in the case of early June peas, when they contain more than 23.5 per cent of solids insoluble in alcohol; and in the case of sweet peas, when they contain more than 21 per cent of solids insoluble in alcohol."

Then there follow numerous references to the testimony taken at the hearing duly called and held by the Secretary of Agriculture, for the purpose, among other things, of fixing and establishing a reasonable standard of quality for canned peas, supporting the suggested findings. Also, under "Suggested Conclusion in the Form of a Regulation," p. 4682, we find the matter summarized as follows:

Section 51.001, "Canned Peas—Quality: Label statement of substandard quality. (a) The standard of quality for canned peas is as follows:

\* \* \* \* \* \* \*

"(6) The alcohol insoluble solids of Alaska or other smooth skin varieties of peas from the container are not more than 23.5 per cent, and of sweet, wrinkled varieties, not more than 21 per cent."

Then there follows a detailed description of how the peas shall be tested to determine whether or not they meet the above-quoted requirement, as well as the other requirements set forth in the same regulation respecting weight, etc. Since, as already stated, defendant admits the reasonableness of the method prescribed in the regulation for determining the alcohol-insoluble solids content, it is unnecessary to discuss or to describe that method.

What has just been quoted was embodied, verbatim, as regulation No. 51.001, promulgated on the 23d of February, 1940, and appearing in the Federal Register for February 24, 1940, p. 744.

As has just been said, the Court is satisfied from the weight of the credible evidence introduced in the present case that this figure of 23.5 per cent imposed an undue hardship upon canners in this area, known as the Tri-State Area, comprising Maryland, Delaware and New Jersey, such as the defendant. The testimony is not all to that effect, and due credence must be given to the opposing testimony of the witnesses for the Government. But the Court can not blink the fact that they are naturally interested, or biased, in seeing that their work or the work of their associates in this matter is upheld, and when such highly qualified witnesses as the head of the Horticultural Department of the University of Maryland and the Executive Secretary of the Tri-State Packers Association testify, as they did, that it is their definite view that the allowable tolerance for all varieties of Alaska peas works an undue hardship in that it does not give sufficient tolerance to enable such peas grown in this area to be marketed with reasonable readiness and profit, the Court feels that their testimony must be given greater weight than the testimony of the Government's witnesses.

It is uncontradicted by the testimony in the present case that a large proportion of packs in recent years in this general area are recognized as not meeting the standard required, by this test, that is, they are labeled sub-standard. For example, in 1941, 28% of the pack was sub-standard. Also, it is uncontradicted that in this area, pea-packing has been declining out of proportion to the decline throughout other sections of the country. It is asserted on behalf of defendant, and the Court feels it has not been successfully contradicted, that this rigid "AIS" requirement has had a material influence in producing these conditions.

One or more of the witnesses testifying for the defendant have stated what they thought would be a proper, somewhat increased tolerance under the "AIS" requirement. One witness has stated that in his opinion it ought to be placed at 24.5 in place of 23.5. Other witnesses stated they were not entirely sure in their own minds as to just what the figure should be, but that if the law does not allow the setting of a standard for each different grade of every variety of pea, then the blanket tolerance should be somewhere in excess of 23.5.

Taking all of the aforegoing into consideration,—and the Court does not mean that because it has specifically referred to certain parts of the testimony, such is all of the testimony that supports its conclusion,—but taking the testimony as a whole, as the Court sees it, we have here a clear case where an administrative agency has promulgated a regulation, the force and effect of which is to impose a hardship upon those affected by it which is not warranted or required by either the expressed or implied language of the statute, and, therefore, such a regulation must fall. However, we do not believe it to be this Court's duty in a case of this kind to attempt to fix, or to say, what the modified tolerance shall be, except that it shall be somewhat greater. Indeed, it would seem inappropriate for the Court to substitute its lay opinion in matters of this kind for that of the trained

expert, by attempting to determine the precise increase to be granted in the tolerance.

In short, as the Court views the problem here, the question may be divided into two parts: First, is the regulation fair and reasonable in its effect; and, second, if not, what regulation would be fair and reasonable? The Court answers the first in the negative, and in answer to the second finds that a regulation giving some tolerance in excess of the tolerance set forth in the original regulation is required, but believes that the precise extent of such greater tolerance is an administrative matter to be determined after due hearing, etc., in the manner prescribed by the Act.

Finally, the Court desires to point out that its conclusion is based upon the view that the primary object of the provisions of the Act under which this case has been brought is to protect the consumer public from adulterated and misbranded foods. We are here only concerned with foods, although the Act deals with other things. Underlying that protection is, of course, the basic idea of the promotion and preservation of health, through production and distribution of food which is not deleterious, but healthy. This, of course, presupposes that the public shall be protected from deception as to the true character of the food that is being shipped in interstate commerce. Certainly, the Government is the proper agency to surround the public with the safeguards that are necessary in order to prevent such food from being adulterated and misbranded. But this Court believes that any regulation passed in furtherance of these basic principles exceeds the legitimate bounds of administrative regulation if it does not operate fairly and reasonably with respect to the producers or distributors of the articles involved, as well as with respect to the consumer public. It is true the Administrator is vested with broad, discretionary authority. It is also true that, for this reason, his findings are to be accepted as conclusive if supported by substantial evidence, *provided always, however, they are within statutory and constitutional limitations.* Federal Security Adm'r v. Quaker Oats Co., 318 U.S. 218, 63 S.Ct. 589, 87 L.Ed. 724. In the present case, we find they are not within either limitation.

Barring cases of inherently dangerous products, as for example, poisons and habit-forming drugs with respect to which of course very stringent regulations must control, when, as here, we are dealing with one of the commonest vegetables—one of the commonest foods that all of us partake of from day to day not only in season but out (thanks to the canning industry), the rights of the grower and canner of peas must be correlated to the rights of the consumer public, so that *all* are protected in a fair and reasonable manner.

In the present case it follows from what has been said that the Court finds that the Administrator in promulgating that part of regulation 51.001 here involved, fixing the alcohol-insoluble solids content of Alaska peas at not more than 23.5%, has overemphasized the factor of consumer taste, and thereby has been so rigid in the regulation, in order to meet the consumer taste, that he has acted in undue derogation of the rights of the growers and canners of such peas in this general area. Whether this finding is actually supported by the weight of the credible testimony at the hearing which led up to the promulgation of the regulation, we do not purport to determine. It is not necessary to do so, because, as heretofore explained, defendant is not controlled by what was proved or decided by that hearing, but has a right to have this Court decide the question of the regulation's validity upon the evidence produced before it.

The Administrator does not have *unlimited power* with respect to promulgating food regulations. He has *only* such power as is expressly given him or reasonably implied by the terms of the Act, so that the intent of the Act may be effectively carried out. Each case must be heard and decided upon its own facts. The Court is conscious of the fact that recently several canners appeared in this Court under similar charges, pleaded guilty and the Court imposed fines, but the legality of the regulation was not raised in those cases. Of course, had it been raised, and had all the features of the issues been presented as fully as in the present case, the Court would have been disposed to reach the same conclusion in those cases that it has reached in the present case. There is no res adjudicata as respects the present defendant by reason of what occurred in previous cases. No defendant in a criminal case is precluded, unless by some express statutory provision or unless he has himself waived the right, from test-

ing the validity of any statute or regulation passed pursuant thereto, when prosecuted for an alleged violation of same.

Judgment will be signed in accordance with this opinion.